IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
June 28, 2005 Session

## TYRIS LEMONT HARVEY v. STATE OF TENNESSEE

Direct Appeal from the Circuit Court for Blount County
No. C-14906   D. Kelly Thomas, Jr., Judge

---

No. E2004-01982-CCA-R3-PC - Filed August 19, 2005

---

The Petitioner, Tyris Lemont Harvey, pursuant to a negotiated plea agreement, pled guilty to burglary and theft of property valued over $500. Pursuant to the plea agreement, the trial court sentenced the Petitioner to an effective four-year sentence, as a Range II offender, and ordered that the Petitioner's sentences run consecutively to a prior sentence. The Petitioner filed a petition for post-conviction relief, alleging that he received ineffective assistance of counsel and that his guilty plea was involuntary and unknowing. The post-conviction court dismissed the petition, and the Petitioner now appeals. Finding no reversible error, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and NORMA MCGEE OGLE, JJ., joined.

Julie A. Rice, Knoxville, Tennessee, for the appellant, Tyris Lemont Harvey.

Paul G. Summers, Attorney General and Reporter; Blind Akrawi, Assistant Attorney General; Michael L. Flynn, District Attorney General; and Robert C. Sawyer, Assistant District Attorney General, for the appellee, State of Tennessee.

OPINION
I. Facts

On May 5, 2003, the Petitioner pled guilty to burglary, in case C-13963, and theft of property over $500.00, in case C-13964. In accordance with a plea agreement, the Petitioner was sentenced to four years for the burglary conviction and to two years for the theft conviction. The trial court ordered that the sentences run concurrently, for an effective sentence of four years. At the Petitioner's guilty plea submission hearing, the Petitioner told the trial court that he was guilty of the charges, and he requested that the trial court accept his guilty plea. The trial court diligently explained the guilty plea procedures to the Petitioner. Regarding the Petitioner's sentence, the following exchange took place:

[The State]:     Your Honor, the State is recommending, on the burglary charge, four years as a Range II offender.  On the theft over $500 charge, we're recommending two years, Range II offender.  And that's to be served concurrently with the -- concurrent to the burglary charge.  And they are both to be consecutive to his current -- what he is currently sentenced on, which is robbery.  And the case number on that is C-9758.

The Court:     So, these two charges are to run together, side by side.  He's pleading to the minimum in the range, as a Range II offender, four years and two years concurrent.  But they're consecutive -- the four-year sentence is consecutive to 9758. Is that your understanding of what's going on here?

[The Petitioner]:     Yes, sir.

Following the hearing, the trial court sentenced the Petitioner in accordance with the plea agreement and entered judgments that provided that the Petitioner's sentence run consecutively to his sentence in case number C-9758.  Subsequently, the Petitioner filed a petition for post-conviction relief, in which he alleges that he received ineffective representation from his counsel, Amy Borroughs ("Counsel"), and, therefore, he contends that his guilty plea was involuntary and unknowing.

At the Petitioner's post-conviction hearing, the following evidence was presented: The Petitioner testified that he is currently serving a prior fifteen-year sentence and the four-year sentence that he received for the burglary and theft convictions in this case.  The Petitioner testified that, prior to pleading guilty, he did not understand that his sentence in this case would be affected by his parole violation on three other convictions: a three-year sentence for a robbery conviction; an eight-year sentence for a drug conviction; and a four-year sentence for another drug conviction. The Petitioner testified that he was unaware that he would have to serve time on those other convictions, which added fifteen years to his effective sentence.  The Petitioner testified that Counsel said that his sentences would run concurrently with his prior robbery sentence, and he explained that this influenced his decision to plead guilty.  He testified that Counsel and her supervisor came to see him in jail a week before his hearing, and they advised him to plead guilty.  He testified that Counsel told him about the plea offer on the morning of the plea submission hearing.

The Petitioner testified that Counsel represented him for four or five months prior to his plea submission hearing.  He recalled that he met with Counsel three times, and he also corresponded with her by mail.  The Petitioner testified that the State offered him a plea agreement, and Counsel recommended that he accept the agreement.  He explained that Counsel told him, and he understood, that the plea agreement called for jail credit for the time he had served while awaiting trial and before his parole revocation hearing.  He understood that the Board of Paroles would not determine when his sentence would begin to run.  The Petitioner testified that he informed Counsel about several witnesses that he wanted Counsel to interview.  The Petitioner explained that he wanted Counsel to interview a man who had provided the Petitioner with a written statement detailing threats made

against the Petitioner's life by one of the Petitioner's accusers. Further, the Petitioner wanted Counsel to investigate the victim's story because, the Petitioner claimed, some of the items that he was accused of stealing were pawned by the victim, others were originally stolen by the victim, and the items listed in the indictment were not the same as the items listed in the original police report. He testified that he told Counsel to investigate Lester Whitted, whom the victim had indicated was involved and who was "the individual who actually went in the storage unit and took the stuff – some of the stuff that, you know, was taken." The Petitioner testified that he is innocent of the burglary and theft charges, and he explained that, had Counsel investigated these witnesses, he would not have pled guilty. The Petitioner testified that, when he told Counsel about the witnesses, she informed him that they would "get to that later."

The Petitioner testified that he met Detective John Cronan through his church and Bible study. The Petitioner testified that he informed Counsel of the circumstances surrounding his statements to Detective Cronan. He recalled that he told Detective Cronan that he had a problem with drugs, and the detective said that he wanted to help the Petitioner. The Petitioner said that Detective Cronan would ask him for information about crime in the neighborhood. He said that the detective visited him in jail after his arrest, and, although he knew the detective was a police officer, the detective visited him and spoke with him as a friend. He said that the detective solicited information from him to "repent from his ways," and they read scriptures together. The Petitioner recalled that the detective went to the Petitioner's parole hearing to testify against the Petitioner, but the detective did not testify. The Petitioner testified that the detective was also involved in the investigation of the burglary and theft charges against him. The Petitioner testified that, before he entered his guilty plea, he was placed in a holding cell with Whitted, who, he explained, was "the guy . . . that actually went in the storage building." He said that being in the cell with Whitted scared and intimidated him, and it influenced his decision to plead guilty. Additionally, he testified that he decided to plead guilty because he had been verbally abused and beaten in the county jail, and his requests for a transfer to the Department of Correction had been ignored.

On cross-examination, the Petitioner testified that he had previously been convicted of robbery, and he had previously pled guilty to five counts of delivery of cocaine. He also explained that he served time in Michigan for felony criminal sexual conduct. He admitted that he had been through jury trials and guilty plea submission hearings before, and he had been informed of his rights each time. The Petitioner recalled that Detective Cronan told the Petitioner that he was a police officer investigating the Petitioner's case. The Petitioner admitted that the detective had him sign three Miranda rights waiver forms, one of which concerned his burglary and theft charges. He recalled writing Counsel three or four letters complaining about the conditions in jail. He admitted receiving a letter from Counsel that detailed the State's previous plea agreement offer of an effective five-year sentence. The Petitioner testified that, before he was arrested, he was smoking crack cocaine "a couple of times a week," but he did not think this affected his memory of the events around that time. He acknowledged that Counsel and her supervisor advised him to plead guilty because he had written a letter to Detective Cronan in which he expressed his "sorrows for being addicted to drugs . . . [a]nd . . . basically saying . . . sorry to certain people." He explained that the letter specifically addressed the victim and her property loss, but he denied that the letter was a

confession. The Petitioner affirmed that Counsel reviewed a tape recording of a phone call that he had made to the victim, during which he told the victim that he thought he knew the whereabouts of her property. The Petitioner testified that he wanted Counsel to investigate Whitted because the Petitioner saw Whitted enter the victim's storage building.

The Petitioner denied that Counsel told him that any sentence that he received would run consecutively to his prior sentences. He remembered Counsel sending him a letter that discussed consecutive sentences, but he explained that the letter only detailed the conditions of the State's prior plea offer. The Petitioner said that Counsel never mentioned the Board of Paroles or its possible effect on his sentence. The Petitioner testified that Counsel told him that, in light of his numerous prior felony convictions, he would face twelve years and six years, at sixty percent, for his burglary and theft charges if convicted at trial. The Petitioner denied that Counsel discussed with him the theory of criminal responsibility.

Counsel testified that she is the attorney who was appointed to represent the Petitioner on the burglary and theft charges to which he pled guilty. Counsel recalled that, in preparation for the Petitioner's case, she spoke with an investigator, obtained discovery from the State, and spoke with the Petitioner's former counsel. She said that she met with the Petitioner about six times in person and once by phone. She remembered that she and the Petitioner spent a long time attempting to determine the Petitioner's prior convictions and the effect those convictions would have on his sentencing. She said that she reviewed the Petitioner's and the other witnesses' statements with the Petitioner, and she talked with him about guilty plea negotiations. Counsel testified that she began working on a motion to suppress the Petitioner's statements, but she had not filed it by the time the Petitioner pled guilty, and she did not think the trial court would have granted the motion. She recalled that she had filed a motion to appoint an investigator, but it had not been heard at the time the Petitioner pled guilty. She said that she wrote the Petitioner letters explaining the information she had about his case, his prior record, and the State's plea offers.

Counsel testified that the Petitioner never told her to contact any witnesses, but she spoke to him about possible witnesses and information that could have potentially assisted in his defense, and she told him she would investigate further before trial. She remembered the Petitioner making general complaints about prison, but she denied that he mentioned any specific incidents that could have put him under duress to plead guilty. She affirmed that she received two letters from the Petitioner about abuse in prison after he pled guilty. Counsel said that she sent the Petitioner letters, which were entered into evidence, that explained that the Petitioner's sentence would have to run consecutively to the sentences he was serving at that time. She noted that the letters also explained the role of the Board of Paroles and the effect his convictions would have on his parole.

Counsel testified that she discussed with the Petitioner the merits of his case and all possible defenses. She said that she diligently researched the Petitioner's case, and she determined that the State had strong evidence against the Petitioner, including a letter he gave to Detective Cronan, and two letters to the victim, in which he apologized for the victim's property loss. She said that the State had a tape recording of a phone call, in which the Petitioner stated that he might know the

locations of several of the stolen items. Counsel explained that, in light of the evidence and the Petitioner's prior record, she thought they should begin negotiating for a plea agreement. Counsel testified that the Petitioner never said he was innocent of the charges. She recalled that she consulted two other criminal defense attorneys in her firm, and both agreed that the State offered a fair and reasonable plea agreement. Counsel testified that she was initially unaware that the Petitioner's parole had been revoked, but, after contacting the parole office, she learned that his parole was revoked for several reasons. She said she spent about six hours speaking with the Petitioner. She denied that the Petitioner ever seemed pressured or coerced into pleading guilty, and she denied telling the Petitioner that he would not have to pay court costs.

On cross-examination, Counsel testified that she did not interview the witnesses that the Petitioner mentioned to her before she advised the Petitioner to accept the plea agreement. She said that she advised the Petitioner to plead guilty before she filed a motion to suppress the Petitioner's statement, and she explained that, because the State had three other incriminating statements from the Petitioner, suppressing one statement would not have significantly assisted the Petitioner's defense. Counsel testified that the plea offer she reviewed with the Petitioner stated that the Petitioner's sentence would run consecutively to case number C-9758, which she later realized was "the wrong docket number." She said that she did not realize, until about a week prior to the post-conviction hearing, that the guilty plea paperwork stated the wrong docket number.

Counsel testified that she was willing to take the Petitioner's case to trial. She said that she explained to the Petitioner that his sentences would run consecutively to his sentences for his drug convictions. Counsel testified that she "absolutely" explained to the Petitioner that his sentence resulting from his plea agreement would be served consecutively to the Petitioner's cocaine charges.

Following this evidence, the post-conviction court dismissed the Petitioner's petition for post-conviction relief, stating:

The allegations of the petition are not supported by the evidence and the petition is dismissed.

The factual findings are as follows:

1. The testimony of [Counsel] . . . demonstrates without question that the specifics of the plea agreement were explained correctly to the [P]etitioner. The [P]etitioner testified that he was told by [Counsel] that the four year burglary sentence was to run concurrently to the early drug cases. The testimony of the [P]etitioner is false and deserving of no weight. The Court is aware that the agreement as announced in Court and memorialized in the judgment was in error.

2. The investigation was sufficient to support intelligent advice from [Counsel] and further inform the [P]etitioner so that he could enter an intelligent and knowing guilty plea. [Counsel] met with the [State], reviewed statements of the state witnesses and

discussed the case with the [P]etitioner. The plea agreement was very favorable to the [P]etitioner in light of his criminal history. It was offered before complete trial preparation had been completed.

3. The testimony of the [P]etitioner that he was under duress thereby rendering his plea involuntary is simply not credible. He mentioned nothing to his attorney or the Court regarding any duress or intimidation.

4. [Counsel] advised [the] [P]etitioner that his actual release is to be determined by the [Board of Paroles]. This is plainly set out in [Counsel's letters to the Petitioner]. The Court also notes that the [P]etitioner was earlier paroled on a fifteen (15) year sentence. Clearly the [P]etitioner knows the role of the [Board of Paroles] and is simply saying anything he deems beneficial with no regard for the truth.

5. The proof shows an adequate investigation as discussed above.

. . . .

Further, the Court notes that no evidence was presented that supported the claim of innocence. Specifically, none of the witnesses [Counsel] is criticized for not interviewing were called to testify. There is no evidence that further investigation would have produced any evidence to benefit the [P]etitioner.

It is from this judgment that the Petitioner now appeals.

## II. Analysis

On appeal, the Petitioner contends that he was denied effective assistance of counsel and that Counsel's errors resulted in an involuntarily and unknowingly entered guilty plea. Specifically, the Petitioner alleges that Counsel was ineffective because: (1) Counsel failed to adequately investigate the Petitioner's case; and (2) Counsel inadequately explained the Petitioner's plea agreement, filled out the guilty plea paperwork incorrectly, resulting in illegal judgments of conviction, and failed to explain to the Petitioner the effects of the Petitioner's prior convictions and the role of the Board of Paroles on the Petitioner's sentence.[1] The State counters that the Petitioner received effective assistance of Counsel, and the Petitioner's plea was knowingly and voluntarily entered.

---

[1]The Petitioner, the State, and the post-conviction court acknowledged that the judgment in case number C-13964 indicates that a two-year TDOC sentence is to be served concurrently with the Petitioner's four-year sentence in case number C-13963, but consecutively to case number C-9758, which is a prior robbery conviction with a sentence that had been "flattened" by the Petitioner at the time he entered the plea in question in this case. The Petitioner, the State, and the post-conviction court also agreed that, at the time the Petitioner entered the plea in question, the Petitioner had additional prior felony drug convictions with unserved TDOC sentences, which were not noted on the judgments in this case.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. Tenn. Code Ann. § 40-30-103 (2003). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). Upon review, this court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999); Henley v. State, 960 S.W.2d 572, 578-79 (Tenn. 1997). A post-conviction court's factual findings are subject to a de novo review by this Court; however, we must accord these factual findings a presumption of correctness, which is overcome only when a preponderance of the evidence is contrary to the post-conviction court's factual findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). A post-conviction court's conclusions of law are subject to a purely de novo review by this Court, with no presumption of correctness. Id. at 457. The Tennessee Supreme Court has held that the issue of ineffective assistance of counsel is a mixed question of law and fact and, as such, is subject to de novo review. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999).

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and Article I, section 9, of the Tennessee Constitution. Id.; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). This right to representation includes the right to "reasonably effective" assistance. Burns, 6 S.W.3d at 461. In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. Baxter, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness," Strickland v. Washington, 466 U.S. 668, 688 (1984), and that this performance prejudiced the defense, resulting in a failure to produce a reliable result. Id. at 687; Cooper v. State, 849 S.W.2d 744, 747 (Tenn. 1993). To satisfy the requirement of prejudice, a petitioner must show a reasonable probability that, but for counsel's unreasonable error, the fact finder would have had reasonable doubt regarding the petitioner's guilt. Strickland, 466 U.S. at 695. This reasonable probability must be "sufficient to undermine confidence in the outcome." Id. at 694; see also Harris v. State, 875 S.W.2d 662, 665 (Tenn. 1994).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. Strickland, 466 U.S. at 690; State v. Mitchell, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court must evaluate the questionable conduct from the attorney's perspective at the time. Strickland, 466 U.S. at 690; Cooper, 849 S.W.2d at 746; Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Burns, 6 S.W.3d at 462. Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. Williams v. State, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980).

In cases involving a guilty plea or a plea of nolo contendere, the petitioner must show prejudice by demonstrating that, but for counsel's errors, he would not have plead guilty but would have insisted upon going to trial. See Hill v. Lockhart, 474 U.S. 52, 59 (1985); Bankston v. State, 815 S.W.2d 213, 215 (Tenn. Crim. App. 1991).

In the case under submission, we conclude that the post-conviction court did not err when it found that the Petitioner received effective assistance of counsel. Counsel reviewed the State's evidence against the Petitioner, spoke to the Petitioner's prior counsel, and spoke with the Petitioner for numerous hours about the details of his case. She determined that the State's plea offer was reasonable and fair in light of the evidence against the Petitioner and the Petitioner's prior record. She explained this information to the Petitioner, and she explained the possible sentences the Petitioner could receive if convicted at trial. Counsel told Petitioner everything about the State's plea offer and the length and manner of service of his sentence. The Petitioner received written communications from Counsel that set forth the role of the Board of Paroles in determining when his sentences would begin to run. Further, Counsel explained in written and oral communications to the Petitioner, that the Petitioner was required to serve his sentences consecutively to the sentences he was serving at that time. The post-conviction court found the Petitioner's testimony lacked credibility, and it accredited Counsel's testimony. Additionally, the court found that Counsel adequately investigated the Petitioner's case, and the Petitioner has not shown that the evidence preponderates against these findings.

Additionally, even if we concluded that Counsel's representation was deficient, the Petitioner has not proven that Counsel's representation prejudiced him. The evidence showed that the Petitioner has participated in numerous guilty plea submission hearings, and that he has been involved in at least two jury trials. The Petitioner admitted receiving the letter from Counsel that detailed the specifics of the State's original plea offer, and this letter set forth the role of the Board of Paroles and explained that the Petitioner's sentences would have to run consecutively to the sentences he was already serving. Moreover, a second letter from Counsel explained that his sentences would run consecutively to the drug conviction sentence that the Petitioner was serving and the letter stated the correct case number for that sentence. The Petitioner was aware that in the cases for which Counsel negotiated an effective sentence of four years, he faced a possible sentence of eighteen years, at sixty percent as a career offender. Counsel testified that the Petitioner never claimed he was innocent, and he primarily spoke with Counsel about trying to obtain the best deal possible. The post-conviction court accredited Counsel's testimony, and it found that the Petitioner "was saying anything . . . beneficial with no regard for the truth." The guilty plea paperwork contained an erroneous case number indicating that the sentences in this case would be served consecutively to a prior sentence for robbery, which had been fully served by the Petitioner. The guilty plea paperwork and judgments should have indicated that the sentences in this case would be served consecutively to a prior effective fifteen-year sentence received by the Petitioner for felony drug convictions. The post-conviction court found that the Petitioner was aware that his sentences would be served consecutively to his fifteen-year drug conviction sentence, and the Petitioner has not shown that the evidence preponderates against this finding.

With regard to the Petitioner's claim that his sentence is illegal, we note that the Tennessee Supreme Court has recently ruled that judgments for new convictions that do not explicitly provide that the sentences are to be served consecutively to a sentence for a prior conviction are not illegal. "Rule 32(c)(3) mandates that new sentences run consecutively to the prior sentence 'whether the judgment explicitly so orders or not.' Thus, the new sentences run consecutively to the prior sentence even if the judgment is silent in this regard." Hogan v. Mills, __ S.W.3d __, 2005 WL 1501677, at *3 (Tenn. June 27, 2005). In our view, the judgment entered by the trial court that orders the Petitioner's sentence to be served consecutively to C-9758 is not illegal. Because the sentence in case C-9758 had apparently been fully served ("flattened") by the Petitioner at the time of his plea agreement in this case, the reference in the judgment to case C-9758 is surplusage. Although the judgment in this case is silent as concerns the Petitioner's prior felony drug sentences, Tennessee Rule of Criminal Procedure 32 (c)(3)(A) requires that the Petitioner's sentences be served consecutively to his prior felony drug sentences.

Finally, the Petitioner has presented no evidence that, had Counsel conducted further investigation into the facts or witnesses involved in the case, he would not have pled guilty. "When a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990); see also Scott v. State, 936 S.W.2d 271, 273 (Tenn. Crim. App.1996). The Petitioner did not call any of the witnesses whose testimony, he claims, would have made him decide to proceed to trial. We, therefore, conclude that the Petitioner is not entitled to relief.

### III. Conclusion

In accordance with the foregoing reasoning and authorities, we affirm the post-conviction court's dismissal of the Petitioner's petition for post-conviction relief.

_____
ROBERT W. WEDEMEYER, JUDGE